**Holly ELWELL, Plaintiff**

**v.**

---

CONAIR, INC.,[1] Defendant

No. 00–289–P–DMC.

United States District Court,
D. Maine.

May 16, 2001.

---

1. The defendant refers to itself in its answer as Conair, Inc. Answer With Jury Demand (Docket No. 2) at 1. At other times, it refers to itself as Conair Corporation. *E.g.,* Unopposed Motion of Extend Deadline to File Motions (Docket No. 7) at 1; Defendant's Statement of Material Facts in Support of Motion for Summary Judgment ("Defendant's SMF") (Docket No. 11) at 1.

Benjamin A. Lowry, Humphrey H.N. Johnson, Lowry & Associates Attorneys, Portland, ME, for Holly Elwell, Plaintiff.

Mark G. Lavoie, Aaron Kenneth Baltes, Norman, Hanson & Detroy, Portland, ME, S.K. Totsy Nichols, Lokey & Smith, Atlanta, GA, for Conair Corporation, Defendant.

**MEMORANDUM DECISION ON DEFENDANT'S MOTIONS FOR SANCTIONS, TO STRIKE, IN LIMINE AND FOR SUMMARY JUDGMENT[2]**

COHEN, United States Magistrate Judge.

The defendant in this product liability action, Conair, Inc., has filed motions for sanctions due to the alleged spoliation of evidence, to exclude the testimony of one of the plaintiff's designated expert witnesses, to strike portions of two affidavits filed by the plaintiff, to strike the errata sheet filed by a witness with respect to the transcript of her deposition, and for summary judgment. Resolution of the motion for summary judgment depends on the outcome of the other motions and I will therefore address it last. This action was removed to this court from the Maine Superior Court (York County) by the defendant. Notice of Removal (Docket No. 1) and attachments thereto.

## I. Factual Background

The following relevant and undisputed material facts appear in the parties' statements of material facts submitted in connection with the motions for summary judgment and sanctions and the motion *in limine* to exclude the testimony of Robert Ridgeway, one of the plaintiff's designated expert witnesses.

The plaintiff, Holly Elwell, alleges that on or about November 26, 1997 she was injured while using a Conair food processor at her mother's house. Defendant's Statement of Material Facts in Support of Motion for Summary Judgment ("Defendant's SMF") (Docket No. 11) ¶2; Plaintiff's Response to Defendant's Statement of Material Facts ("Plaintiff's Responsive SMF"), included in Plaintiff's Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment (Docket No. 17), ¶2. The plaintiff's brother purchased the food processor as a gift for the plaintiff's mother in the mid–1980s. *Id.* ¶3. The food processor was stored

---

2. Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge David M. Cohen conduct all proceedings in this case, including trial, and to order entry of judgment.

under the kitchen counter at the plaintiff's mother's house. *Id.* ¶ 5.

On the day of the plaintiff's accident, she removed the food processor from the cupboard, placed it on the counter and put food into the bowl. *Id.* ¶¶ 6–7. She put the lid on top of the bowl and turned the cover so that it was just barely under the lip where the words "unlock" and "off" appear. *Id.* ¶ 7 & Reply to Plaintiff's Response to Defendant's Statement of Material Facts ("Reply to Response"), included in Defendant's Reply Statement of Material Facts (Docket No. 19), ¶ 7(b). She then put her left hand on the base of the food processor and used her right hand to plug it in. Defendant's SMF ¶ 7; Plaintiff's Responsive SMF ¶ 7. As she plugged in the food processor, the plaintiff felt a slight vibration in the base of the machine and saw it lift off the counter a couple of centimeters. *Id.* ¶ 8. The lid flew at the plaintiff and hit her left hand. *Id.* ¶ 9. The blade flew out spinning and hit the plaintiff's left hand. *Id.*

The plaintiff has designated Ralph Ridgeway as an expert witness to testify about defects in the food processor. *Id.* ¶ 10. On or about October 22, 1998 Ridgeway met with the plaintiff's then-attorney to inspect the food processor. *Id.* ¶ 19. Ridgeway plugged in the food processor and attempted to get it to operate with the cover off. *Id.* ¶ 20. Normally, the cover is put on and rotated to a locked position, which causes a tab on the cover to push a spring-loaded ramp, thus depressing two plastic pins which in turn depress two rubber-tipped plunders in the base on the machine, which activates the power switch and allows the processor to operate. *Id.* & Reply to Response ¶ 20(b). Ridgeway successfully operated the food processor one time with the cover off. Defendant's SMF ¶ 21; Plaintiff's Responsive SMF ¶ 21. When he plugged it in a second time, it

buzzed and smoked and the blade no longer turned; it has never run again. *Id.*

Ridgeway took the food processor back to his office. *Id.* ¶ 23. When the plaintiff's attorney asked him to prepare a report, Ridgeway visually inspected the food processor and noticed that the plungers were stuck in the down position. *Id.* ¶¶ 23–24. Ridgeway tapped the food processor with his hand and the plungers popped back up. *Id.* ¶ 25. Ridgeway subsequently wrote a report in which he opined that if the food processor were stored in its assembled condition with the cover in the locked position, the pressure of the plastic pins and counter pressure of the plunger springs would cause the plungers to bulge, resulting in the plungers sticking down when the cover and bowl were subsequently removed. *Id.* ¶¶ 29–30. Prior to his deposition, Ridgeway did not know whether the food processor had in fact been stored in this manner. *Id.* ¶¶ 37, 39.

The defendant has designated David J. Wanat as its expert witness. Plaintiff's Statement of Additional Material Facts ("Plaintiff's SMF"), included in Plaintiff's Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment (Docket No. 17), ¶ 49; Reply to Plaintiff's Statement of Material Facts ("Defendant's Responsive SMF"), included in Defendant's Reply Statement of Material Facts (Docket No. 19), ¶ 49. Wanat began his inspection of the food processor on July 22, 1999. *Id.* ¶ 50. He found that the interlock mechanism of the food processor worked properly both before and after he submitted the unit to a storage test. *Id.* ¶ 52. He attached the bowl, blade and bowl cover from the unit to the base of a functioning exemplar food processor in order to perform a test with a unit that had a functioning motor. *Id.* ¶ 57. By physically overcoming the inter-

lock mechanism, Wanat was able to power up the exemplar unit without the bowl and lid locked in place. *Id.* ¶ 59. The food processor at issue can only operate if the interlock switch is depressed. *Id.* ¶ 71. After storing the subject unit at room temperature with all parts locked in position for eight days, Wanat did not see any distortion of the rubber plungers. *Id.* ¶ 60.

## II. The Motions to Strike

### A. Ridgeway Affidavit

■ The defendant moves to strike paragraphs 1 and 3–8 of the Affidavit of Ralph H. Ridgeway filed as Exhibit H to the plaintiff's statement of material facts. Defendant's Motion to Strike Affidavits ("Motion to Strike") (Docket No. 22) at 4–5. It asserts that paragraphs 3–5 and 8 duplicate Ridgeway's deposition testimony and merit striking for that reason and that paragraphs 1 and 6–7 violate the proscription established by *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir.1994), against the use in connection with summary judgment of affidavits that contradict the affiant's earlier deposition testimony. *Id.*

The defendant cites no authority in support of its assertion that paragraphs of an affidavit should be stricken merely because the information contained therein duplicates testimony already given at deposition, although it does mention Fed.R.Evid. 403 in its reply memorandum, contending that the duplicative material constitutes "a needless presentation of cumulative evidence." Reply Memorandum in Support of Defendant's Motion to Strike Affidavits (Docket No. 26) at 2. The language of Rule 403 makes clear that it is intended to protect the jury and to avoid delay and waste of time. At the summary judgment stage, asking a court to strike material from an affidavit on the ground that the material is duplicative or cumulative is it-

self a waste of the court's time. It makes no difference to resolution of a motion for summary judgment, or indeed any pretrial motion, whether a party seeks to rely on deposition testimony or identical evidence in the form of an affidavit. So long as the party does not insist that the court consult both sources for the same information, no harm is done. Insofar as the defendant's motion rests on this rationale, it is denied.

■ In *Colantuoni* the First Circuit held that "[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." 44 F.3d at 4–5.

The defendant contends that paragraph 1 of Ridgeway's affidavit "obviously contradicts the implication, if not the letter" of his deposition testimony as it "seeks to back away from his prior deposition testimony that he considers it his role in the case to explain how the accident occurred." Motion to Strike at 4. The first paragraph of the affidavit states:

> I was retained in this matter by Sean O'Connell, Esq. Sean O'Connell paid my firm, Robson Lapina, an initial retainer of $1,000. He then asked me to inspect the food processor in question, and to assess whether it had any defects that caused the incident at issue.

Ridgeway Aff. ¶ 1. Ridgeway's deposition testimony identified by the defendant as providing the basis for exclusion of this paragraph of the affidavit under *Colantuoni*, Motion to Strike at 4, is the following:

> Q. Now, what do you consider your role as an expert here today?
> A. Basically, to try to explain how this accident could have occurred and if that explanation, to me at least, sounded rea-

sonable in relation to the description that Holly said that it happened [sic].

Deposition of Ralph H. Ridgeway, excerpts attached as Exh. D to Defendant's SMF, at 194. The two statements by Ridgeway are not clearly contradictory. The former is a factual statement, the latter a statement of opinion. Whether Ridgeway's view of his assignment is inconsistent with what the plaintiff's lawyer asked him to do is not a matter relevant to any of the issues now before the court and, more importantly, does not establish a contradiction within the scope of the use of that term in *Colantuoni.*

The defendant asserts that paragraphs 6–7 of the Ridgeway affidavit "provide additional information about Mr. Ridgeway's expert qualifications, in an obvious attempt to defeat the Defendant's argument that he is unqualified to testify" in this case. Motion to Strike at 5. Additional information is not, contrary to the defendant's apparent assumption, necessarily contradictory information. While Ridgeway may have been "methodically and comprehensively questioned about his qualifications" during the deposition, *id.,* that fact does not prevent the plaintiff from offering additional information on that point. In none of the pages of the transcript of Ridgeway's deposition cited by the defendant was Ridgeway asked whether he had any other qualifications relevant to his role in this case nor did he state that he had no further qualifications. Only under such circumstances could his affidavit statements possibly be considered contradictory.

The defendant's motion to strike portions of the Ridgeway affidavit is denied.

### B. The Drew Deposition Errata Sheet

In a separate motion, the defendant asks this court to suppress or strike the errata sheet submitted by Shirley M. Drew[3] to accompany the transcript of her deposition on the ground that it impermissibly alters her testimony. Defendant's Motion to Suppress or Strike Errata Sheet ("Motion to Suppress") (Docket No. 23) at 2. Fed.R.Civ.P. 30(e) provides:

If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them. The officer shall indicate in the certificate prescribed by subdivision (f)(1) whether any review was requested and, if so, shall append any changes made by the deponent during the period allowed.

In this case, Drew made the following entries on an errata sheet that has been appended to the transcript of her deposition:

Page: 38

Line: 11–14

From: [No entry]

To: The Conair food processor was stored on the bottom shelf of the cabinet all together, in one unit, for about a year, since Christmas of the year previous. I made jelly in September at which time I removed the processor from its place, set the jelly jar box in that spot and placed the food processor on the top of the box, making the unit to [sic] tall to fit. I then removed the cover and set it beside the unit on the box. It was so

---

**3.** Drew is the plaintiff's mother. This fact is not included in either party's statement of

material facts, but there does not appear to be any dispute on this point.

long ago, I had forgotten. So Holly, not living there, never noticed that the machine had been stored all together since Christmas. All she knew was it was apart when she went to use it that fateful Thanksgiving. She presumed, without asking differently, that it was always that way. At least it was when she noticed it, to use it.

Reason: I remembered this while reading my transcript.

Errata Sheet, [Deposition of Shirley M. Drew] ("Drew Dep. II"), excerpts attached to Plaintiff's SMF as Exhibit B. The lines in the transcript identified in the entry on the errata sheet read as follows:

Well, I had made a box of jelly and I put it on that shelf in the jelly jar box, and I set this on top of it. So in order to have that on top of it, I had to take the top of that thing off.

Drew Dep. I at 38.

The defendant contends that the change proposed on the errata sheet, the timeliness of which is not challenged, is an attempt "to alter the prior deposition testimony ... so that it aligns better with Mr. Ridgeway's hypothesis," noting that the errata sheet was executed after the defendant filed its motion to exclude Ridgeway's testimony, based in part on the fact that his conclusion was not supported by Drew's deposition testimony. Motion to Suppress at 5. While noting this court's order on a similar issue in *Great N. Storehouse, Inc. v. Peerless Ins. Co.*, 2000 WL 1901266 (D.Me. Dec. 29, 2000), the defendant contends that the better view of the law on this point, on which the First Circuit has not yet spoken, is that set forth in *Greenway v. International Paper Co.*, 144 F.R.D. 322 (W.D.La.1992), which the defendant refers to as representing "the genesis" of the "modern trend," Motion to Suppress at 2.

In *Peerless*, Magistrate Judge Kravchuk was asked to prevent any reference at trial to four pages of errata sheets signed pursuant to Rule 30(e) by the employee of the defendant who had made the decision at issue in the action. 2000 WL 1901266 at *2. The deponent's stated reason for the changes was "more complete answers." *Id.* Judge Kravchuk states:

Rule 30(e) allows deponents to provide revised answers to deposition questions, including answers contradictory to those provided at the deposition. The Rule does not require a judge to examine the sufficiency, reasonableness, or legitimacy of the reasons for the changes—even if those reasons are unconvincing. The Rule merely requires that the deponent abide by a restricted time frame for making the changes and recite the reasons for any changes. However, when a party amends his testimony under Rule 30(e), the original answer to the deposition questions will remain part of the record and can be read at the trial. Though a reason must be supplied for the changes, there is no indication that the explanation must be any more indepth than the reasons provided ... herein. For this reason, I am unpersuaded that Rule 30(e) itself justifies any exclusion of [the changes]. [The deponent's] revisions will be permitted to supplement his original deposition answers.

*Id.* (citations and internal punctuation omitted).

In *Greenway*, the plaintiff made 64 corrections to her deposition. 144 F.R.D. at 323. The court ordered the changes deleted, despite a more extensive statement of reasons for the proposed changes than that present in *Peerless*, stating that "The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer

the questions with no thought at all then return home and plan artful responses." *Id.* at 325. I do not find this reasoning persuasive. If the original answers as well as the changes are made available to the jury when and if the deposition testimony is used at trial, the jurors should be able to discern the artful nature of the changes. For purposes of pre-trial motions, the plain language of Rule 30(e) should control. The motion to strike or suppress the errata sheet is denied.

## C. Drew Affidavit

The defendant asks the court to strike paragraphs 1-4 of the affidavit of Shirley M. Drew, attached to the plaintiff's statement of material facts as Exhibit C, because they duplicate her deposition testimony, and paragraphs 5-9, the remaining paragraphs of that affidavit, with the exception of a single statement, as contradicting her deposition testimony. Motion to Strike at 3-4. For the reasons already discussed, I will not strike the paragraphs alleged to be duplicative.

Of the material at issue in paragraphs 5-9 of the affidavit, the defendant offers no evidence to suggest that the first sentence in paragraph 7, the second sentence in paragraph 8, or the first clause in the third sentence of paragraph 8 contradict any of Drew's deposition testimony. The defendant does not object to the first sentence of paragraph 8. Motion to Strike at 3. Accordingly, none of these sentences or sentence fragments may be struck in any event.

The remaining statements, while they may appear to contradict Drew's deposition testimony without reference to the errata sheet subsequently executed by Drew and attached to the transcript of that deposition, are not contradictory when considered in light of the correction and amplification of the deposition testimony intended by the changes made in the errata sheet.[4] The defendant's motion to strike portions of the Drew affidavit is denied.

## III. Motion for Sanctions

The defendant asks this court to dismiss this action with prejudice or to exclude the testimony of Ridgeway as a sanction for the destruction of the food processor's motor during Ridgeway's examination before the food processor was made available for inspection by the defendant. Defendant's Motion for Sanctions for Spoliation of Evidence ("Spoliation Motion") (Docket No. 8) at 1, 3.[5] As Judge Carter noted in *Northern Assurance Co. v.*

---

4. It is not necessary to reach the plaintiff's argument that the *Colantuoni* standard is not met because Drew is not an interested witness, Plaintiff's Objections to Defendant's Motion to Strike Affidavits (Docket No. 25) at 2, but I note that Drew, as the plaintiff's mother and a witness to the accident, is an interested witness, if that status is required by *Colantuoni,* in which the affidavit at issue was that of the plaintiff. In *Torres v. E.I. Dupont De Nemours & Co.,* 219 F.3d 13, 16, 20 (1st Cir.2000), the First Circuit applied *Colantuoni* to the affidavit of a non-party witness, a client of the plaintiff. If such a witness is "interested," surely the plaintiff's mother has that status.

5. The defendant also claims that the fact that the plaintiff's brother dropped the food processor, chipping its bowl, Defendant's SMF ¶ 48; Plaintiff's Responsive SMF ¶ 48, "the day before Mr. Ridgeway's deposition," Spoliation Motion at 2, entitles it to sanctions. Ridgeway's deposition was conducted on January 31, 2001, Deposition of Ralph H. Ridgeway, excerpts attached as Exh. D to Defendant's SMF, at cover, and the defendant's expert conducted his examination of the food processor for "several days" after July 22, 1999, Plaintiff's SMF ¶ 50; Defendant's Responsive SMF ¶ 50. The defendant has not even suggested how the chipping of the bowl caused it any prejudice. Therefore, this event will not be considered further in this regard.

*Ware*, 145 F.R.D. 281 (D.Me.1993), when a party is accused by an opponent of spoliation of evidence "the most severe sanction of dismissal should be reserved for cases where a party has maliciously destroyed relevant evidence with the sole purpose of precluding an adversary from examining that relevant evidence." *Id.* at 282 n. 2. The defendant offers no evidence of such malicious destruction here, and dismissal of the action is accordingly not warranted.

Under settled authority, the district court has inherent power to exclude evidence that has been improperly altered or damaged by a party where necessary to prevent the non-offending side from suffering unfair prejudice. Although deterrence may play a role, the primary aim is remedial, at least absent willful destruction. This power is a companion to, but somewhat different in effect from, the doctrine that permits an adverse inference from one side's destruction of evidence. *Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 446 (1st Cir.1997) (citations omitted). "If ... evidence is mishandled through carelessness, and the other side is prejudiced, we think that the district court is entitled to consider imposing sanctions, including exclusion of the evidence." *Id.* at 447. Bad faith is not a necessary prerequisite for the imposition of sanctions for spoliation of evidence. *Trull v. Volkswagen of Am., Inc.*, 187 F.3d 88, 95 (1st Cir.1999). Prejudice to the moving party, however, is required.

█ Here, there is no evidence that Ridgeway knew or should have known that the motor of the food processor would burn out the second time he plugged it in. There is no allegation that he did anything to cause the destruction of the motor beyond plugging the appliance in. Nor, from all that appears, could he have anticipated that the mere act of plugging the appliance

in would result in the inability of any subsequent examiner to attempt to replicate the accident as the plaintiff described it with the entire food processor at issue. The only prejudice identified by the defendant as flowing from Ridgeway's actions is that "there is no way for Defendant to test Mr. Ridgeway's pre-spoliation observation that the food processor ran without the cover being locked in place." Spoliation Motion at 3. However, the defendant does not suggest how or why the motor of that unit was critical to this test. The defendant was able to transfer the other part of the unit, including the interlock mechanism that is at the heart of this case, to the motor base of an exemplar unit and to test the mechanism with the power supplied by that motor. It does not suggest any way in which this testing was so inferior to testing with the original motor that it has been unfairly prejudiced in preparation of its expert testimony. For all that appears in the record, the motor did not burn out due to any unfair activity by Ridgeway. Unlike the situation in *Ware*, there was no selective preservation of evidence here. The defendant may inform the jury through testimony at trial, if it wishes, that its expert was unable to duplicate the precise conditions under which the plaintiff claims she was injured due to the fact that the motor of the food processor was burned out when the plaintiff's expert was testing it. Beyond that, it has not shown sufficient prejudice to justify excluding Ridgeway's testimony. *See generally McLaughlin v. Denharco, Inc.*, 129 F.Supp.2d 32, 35–36 (D.Me.2001). The motion for sanctions is denied.

## IV. Motion to Exclude Expert Testimony

█ The defendant asks the court to exclude Ridgeway's testimony pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125

L.Ed.2d 469 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), based on his alleged lack of qualifications and the lack of scientific and factual support for his proposed testimony. Defendant's Motion in Limine ("Motion in Limine") (Docket No. 9) at 2–7.

*Daubert* is often characterized as establishing the trial judge as the "gatekeeper" for expert testimony. *See* 509 U.S. at 589 n. 7, 113 S.Ct. 2786. While it is now clear that the trial judge's general "gatekeeping" function with respect to expert testimony that was set forth in *Daubert* applies to all expert testimony, not just that based on scientific knowledge, *Kumho*, 119 S.Ct. at 1171, it is also clear that the specific analytic factors listed in *Daubert* "neither necessarily nor exclusively appl[y] to all experts or in every case," *id.*[6] Relevant reliability concerns may focus on personal knowledge or experience, not just scientific principles. *Id.* at 1175. "[T]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* (quoting with approval from the brief for the United States as *Amicus Curiae*). "[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 1176.

■ The defendant centers its attack on Ridgeway's qualifications on his opinions that:

the food processor was stored in its assembled condition with the cover in the locked position, the pressure of the plastic pins and counter pressure of the plunger springs would cause the plungers to bulge, resulting in the plungers sticking down even if the cover and bowl are subsequently removed;

Defendant's SMF ¶ 29; Plaintiff's Responsive SMF ¶ 29, and

the cause of this malfunction is a design defect in the rubber material of the plungers, such that they distort or bulge from the combined spring pressures when the processor is stored in the assembled condition. Mr. Ridgeway further observed, reported and opined that the distortion or bulging of the rubber plungers continued after the combined spring pressure on these plungers was removed,

*Id.* ¶ 30 & Reply to Response ¶ 30. Motion in Limine at 3. The defendant states that Ridgeway has never worked with small electrical household appliances in general or food processors in particular; that he has never worked as an expert witness in any case involving such appliances; that he has no work experience with rubber or plastic materials and has not served as an expert witness in any case involving such materials; and has never taken a course in the science of plastics. *Id.* at 3–4. These facts, the defendant contends, make Ridgeway unqualified to give the cited opinions. *Id.* The defendant also discusses at some length the testing that Ridgeway did not perform. Defendant's Reply Memorandum in Support of Motion in Limine ("Reply Memorandum") (Docket No. 21) at 2–4.

The opinions set forth above do not include any suggestion of a material that would have been appropriate to avoid the problems identified with the plungers. They do not even suggest that a more

---

**6.** Contrary to the suggestion of the defendant, Motion in Limine at 2–3, the fact that the subject matter of expert testimony is not "sci entific" is no bar to its admissibility. *United States v. Kayne*, 90 F.3d 7, 11 (1st Cir.1996).

appropriate material was available. The observation that a device made of a particular material performed in a certain manner does not require, under the circumstances of this case, formal training in the science that deals with the physical characteristics of that material. Neither of the cited opinions requires that Ridgeway have any of the experience or training that the defendant suggests he lacks. The defendant's concerns may be relevant to the weight to be accorded to Ridgeway's opinions, but they do not make him unqualified to offer those opinions. *See McLaughlin,* 129 F.Supp.2d at 35–36.

The defendant asserts that Ridgeway did not use reliable principles and methods in reaching the cited opinions, listing things that Ridgeway did not do or did not know. Motion in Limine at 5–7. Each of these alleged omissions goes to the weight of the opinions, not to admissibility. The defendant cites no authority for its assumptions that Ridgeway was required to assert a scientific principle to support the plaintiff's version of the accident, to test other food processors of the same model, or to "calculate a rate of error for the model in question," *id.* at 6–7, nor am I aware of any. The defendant appears to suggest as well that Ridgeway was required to publish these specific opinions or that the plaintiff is required to show that these specific opinions are generally accepted by the scientific community. *Id.* at 7. Such case-specific opinions cannot be subject to such requirements; if they were, they could never be offered in litigation.

█ A closer question is presented by the defendant's argument that Ridgeway's opinions "are based on factual assumptions that are at odds with the undisputed facts," Motion in Limine at 4. According to the defendant, this means that the opinions are not "based on sufficient facts or data"

as required by Fed.R.Evid. 702. *Id.* at 5. Specifically, the defendant refers to Drew's deposition testimony that the food processor was not stored as an assembled unit and the lack of any evidence that, even if the food processor had been stored as an assembled unit, the cover was in the locked position during such storage. *Id.* at 4–5; Reply Memorandum at 4. Drew's original deposition testimony is not correctly characterized as "undisputed fact." I have denied the defendant's motion to strike or suppress the errata sheet in which Drew states that the food processor was in fact stored "all together, in one unit, for about a year." Drew Dep. II, Errata Sheet. However, even as modified, Drew's testimony does not establish that the food processor was stored with the lid *in the locked position,* a factual predicate that is essential to Ridgeway's opinion. It is clear from the testimony of the plaintiff herself that the lid could be placed on the unit without being in the locked position. Deposition of Holly Elwell, excerpts attached as Exhibit A to Defendant's SMF, at 76.

Ordinarily, I would reserve ruling on a motion *in limine* to exclude expert testimony on the ground that a necessary factual predicate to the expert's proffered opinions does not exist, allowing the party offering the expert the opportunity to establish that predicate at trial. However, in this instance the defendant has made the lack of this factual predicate one of the bases for its motion for summary judgment, and under these circumstances the plaintiff does have the burden to place the necessary facts, which may or may not be disputed, before the court. The *in limine* motion is therefore granted in the summary judgment context with the consequence that Ridgeway's product liability opinion testimony is excluded from the summary judgment record.

## V. Motion for Summary Judgment

 The defendant seeks summary judgment solely based on the exclusion of the testimony of the plaintiff's expert. Defendant's Motion for Summary Judgment (Docket No. 10) at 2–3. The plaintiff responds in conclusory fashion that proof of a defect in the product is not necessary to her negligence claim and that she may proceed without expert testimony. Plaintiff's Objections to Defendant's Motion for Summary Judgment (Docket No. 16) at [2]-[3]. She also states that the breaches of duty involved in her "negligence" claim are the designing of an interlock switch that was susceptible to failure and the selection of a material that was susceptible to failure when put to its intended use, *id.* at [2], presumably the material used to make the plungers that Ridgeway is prepared to testify would stick in the depressed, "on" position when the cover of the food processor was left in the locked position. I conclude that neither alleged breach can be established without expert testimony, and that the only expert testimony offered by the plaintiff on this point is the excluded Ridgeway testimony. Accordingly, the defendant is entitled to summary judgment.

 While the complaint does not invoke Maine's strict liability statute, 14 M.R.S.A. § 221, the plaintiff's identification of her claims of negligence in her memorandum of law establishes that she bases her case on a theory of product design defect. Such claims come within the scope of that statute. "Products will be considered in a defective condition unreasonably dangerous to users or consumers either where error was committed in the manufacturing or design process or where the manufacturer or supplier failed to warn of a product hazard." *Walker v. General Elec. Co.,* 968 F.2d 116, 119 (1st Cir.1992) (construing section 221). The

burden of proof on this point rests with the plaintiff. *Bouchard v. American Orthodontics,* 661 A.2d 1143, 1145 (Me.1995). Proof of a defect in product design "involves an examination of the utility of the product's design, the risk of such design and the feasibility of safer alternatives." *Walker,* 968 F.2d at 119. Whether expert testimony is required on this point or not, the plaintiff fails to identify any source of such evidence other than the challenged testimony of Ridgeway. Even assuming that the plaintiff's claim sounds in negligence independent of the strict liability statute, this evidentiary omission is fatal. *Id.* at 120.

When a plaintiff's sole expert witness presents a hypothesis that is not supported by the facts in the summary judgment record, and no other evidence to support the plaintiff's theory of negligence is offered, summary judgment for the defendant is appropriate. *Schubert v. Nissan Motor Corp. in U.S.A.,* 148 F.3d 25, 30–32 (1st Cir.1998); *Green v. Cessna Aircraft Co.,* 673 A.2d 216, 219–20 (Me.1996).

## VI. Conclusion

For the foregoing reasons, the following rulings will be entered on the defendant's motions:

(i) the defendant's motion to strike affidavits is **DENIED**;

(ii) the defendant's motion to suppress or strike the errata sheet to the deposition of Shirley Drew is **DENIED**;

(iii) the defendant's motion for sanctions for spoliation of evidence is **DENIED**;

(iv) the defendant's motion *in limine* to exclude the testimony of Ralph H. Ridgeway is **GRANTED**; and

(v) the defendant's motion for summary judgment is **GRANTED**.